UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILDRED MAZGAJ; MARIAN ANTHONY,<br><br>              Plaintiffs,<br><br>v.<br><br><br>CORINA GALVEZ; ISSAC GALVEZ; CECEILA LEON; GABRIELLA GALVEZ-REYNA; et al.,<br><br>              Defendants. | Case No.: 3:24-cv-00776-JAH-AHG<br><br>**ORDER:**<br><br>**GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT PREJUDICE.**<br><br>[ECF No. 4] |

## **INTRODUCTION**

Pending before the Court is Defendant Corina Anthony's ("Defendant Anthony")[1] Motion to Dismiss pursuant to Rule 8 of the Federal Rules of Civil Procedure ("FRCP").

---

[1] Defendant's true name does not appear in the Order's heading because she was erroneously sued under the name, "Corina Galvez," when in fact her name is Corina Anthony. *See* Mot at 2.

1

ECF No. 4 ("Motion" or "Mot."). Plaintiffs Mildred Mazgaj and Marian Anthony (collectively, "Plaintiffs"), proceeding *pro se*, filed a Response in Opposition to the Motion on May 31, 2024. ECF No. 5 ("Opposition" or "Opp'n"). Defendant's Motion is decided on the Parties' briefs and without oral argument pursuant to Civil Local Rule 7.1.d.1. After a thorough review of the Parties' submissions, and for the reasons discussed below, the Court **GRANTS** Defendant's Motion to Dismiss, and Plaintiffs' Complaint is **DISMISSED with leave to amend**.

## BACKGROUND

Plaintiff Mazgaj is the 78-year-old mother of Plaintiff Anthony. ECF No. 1 ("Compl.") at 4.[2] Defendant Anthony is or was at one time married to Plaintiff Anthony, with whom she is "currently engaged in an ongoing family dissolution matter" in state court. Mot. at 5. In fact, Plaintiff Anthony has also sued Judge Daniel Segura (who presided over their family law proceeding) in the Southern District of California, case number 3:24-cv-00458-BAS-SBC. *Id.* That case has since been dismissed with prejudice based on the *Rooker-Feldman* doctrine, Eleventh Amendment immunity, and judicial immunity. *Anthony v. Segura*, 2024 WL 3315996, at *3-4 (S.D. Cal. July 3, 2024).[3]

---

[2] Unless otherwise stated, page numbers referenced herein refer to page numbers generated by the CM/ECF system.

[3] Defendant requests the Court take judicial notice of a copy of the Memorandum of Points and Authorities filed by Judge Segura in support of his Motion to Dismiss. Mot. at 5. A district court may take judicial notice of facts that are generally known within its jurisdiction, or that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed.R.Civ.P. 201(b)(2). While the existence of briefing from another case may be judicially noticeable, the content is not judicially noticeable for its factual accuracy. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within the document is judicially noticeable for its truth"); *see also M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983). Nevertheless, Defendant's request for judicial notice is **DENIED** as moot because Judge Segura's motion was granted, and that opinion is referenced herein. *See Anthony*, 2024 WL 3315996.

On May 1, 2024, Plaintiffs filed their Complaint in the instant case against Defendant Anthony and her siblings. Compl. at 1, 4. Plaintiffs' Complaint is forty-six pages in length and contains seventy-three pages of exhibits. *See* Compl. In the Complaint, Plaintiffs do not separate the causes of action alleged, creating a challenge for the Court to determine what facts support what claims. As best as the Court can determine from the pleadings, the underlying factual bases for Plaintiffs' claims derive from an alleged scheme by Defendants to illegally gain the rights to the Anthony Family Revocable Living Trust (the "Living Trust"), (*id.* at 11), and affect the ongoing custody dispute over Plaintiff Anthony's and Defendant Anthony's minor children, (*id.* at 29.)

It is unclear when the Living Trust was formed. However, Defendant Anthony was named the Successor Trustee on November 18, 2019. *Id.* at 11. According to Plaintiffs, the Living Trust's assets are valued at more than $2,000,000. *Id.* at 9. Plaintiffs contend that, at some point in August of 2022, Defendant Anthony reported Plaintiffs to law enforcement officials for "multiple allegations." *Id.* at 11. Plaintiffs describe the "allegations" Defendant Anthony made to law enforcement throughout the Complaint, making it unclear to the Court whether the allegations were made contemporaneously or at different times. As far as the Court can gather, Plaintiffs claim—while they were at the movies with Plaintiff Anthony's minor children—Defendant Anthony called 911 and reported Plaintiff Anthony was "hiding and waiting in the bushes … waiting to ambush and kill us[.]" *Id.* at 19. Plaintiffs also claim Defendant Anthony reported Plaintiff Anthony was displaying a weapon in a threatening manner. *Id.* at 19. Plaintiffs suggest Defendant Anthony's purpose for calling law enforcement was to create a situation whereby Plaintiff Anthony may have "reached for his wallet … [and] most likely would have been shot" and killed, allowing Defendant Anthony to take over the Living Trust as the Successor Trustee. *Id.* at 11.

Plaintiffs claim, in response to Defendant Anthony's reports, law enforcement deployed "helicopters, dozens of emergency response units, including Police, fire, ambulance, CPS, [and] K9(s), essentially barricading the surrounding areas[.]" *Id.* at 19.

Furthermore, Plaintiffs claim Defendant Leon—the wife of a "LASD Law enforcement officer, a Captain with over 25-years' experience"—waited outside Plaintiffs' home for two hours without a warrant. *Id.* at 35-36. According to Plaintiffs, when they arrived home from the movies, they were met with "extreme police force" organized by the Defendants, resulting in Plaintiff Anthony being hospitalized overnight for injuries "sustain[ed] during the event." *Id.* at 9. Plaintiffs allege Defendant Leon stood and observed the law enforcement incident, capturing a video of the scene and "smiling and laughing" while the children "suffer[ed] the immediate trauma of the *'domestic terrorism'* [of] having six officers, and K-9 units with firearms drawn – pointing at [them] … with hostile deadly force intent[.]" *Id.* at 35-36. Plaintiffs claim the law enforcement encounter caused "extreme emotional and psychological harm" to the children. *Id.* at 37.

The Court notes the above claim is not the only allegation Plaintiffs make involving Defendants attempting to take their lives. Plaintiffs also claim that Defendants collectively hired a "hit-man" at some undisclosed time to "effect [sic] harm on the Plaintiffs," though no more information is provided about this event. *Id.* at 21.

Plaintiffs also describe actions taken on behalf of Defendant Anthony and her siblings to interfere with Plaintiff Anthony's custody of their children. First, Plaintiffs claim Defendant Anthony placed the children in the "exclusive" physical custody of Defendant Issac Galvez (her brother, as far as the Court can determine from the Complaint). *Id.* at 29. Plaintiffs go on to explain the siblings would launch attempts to "encourage a physical reaction" by Plaintiff Anthony, (*id.*), presumably to affect the child custody proceedings. Second, Plaintiffs describe a scheme by which Defendants Anthony and Galvez-Reyna conspired to secure a steady job for Defendant Anthony to affect the custody proceedings. *Id.* at 34-35. Plaintiffs explain Defendant Galvez-Reyna is the principal at "Norwalk K-LA Mirada Unified School District of Los Angeles," and hired Defendant Anthony as an educator over "other qualified" candidates. *Id.* at 32. According to Plaintiffs, Defendant Galvez-Reyna's decision to hire Defendant Anthony constitutes a "collaborative act[]" to deprive Plaintiff of his children. *Id.* at 34.

Further related to this alleged conspiracy to deprive Plaintiff Anthony of his children, Plaintiffs refer to one Defendant's mental health records and history, alleging that this same Defendant has threatened to kidnap Plaintiff Anthony's children "over the period of years." Compl. at 7. It is later alleged that this same Defendant has, at some time, engaged in destruction of property and destruction of evidence by tampering with Plaintiff Anthony's home security system and "ensuring lack of ability to capture any possible evidence of his misconduct." *Id.* at 8, 10. Plaintiffs assert that Defendant Anthony "had access to the home security system. . ." and used this access to "intentionally delet[e] videos to disguise their misconduct." *Id.* at 23. Plaintiffs claim these acts illustrate Defendants' furtherance of a conspiracy, because "why would a person destroy evidence unless they needed to hide something[?]" *Id*. Plaintiffs also make repeated references to violations of Plaintiff Anthony's constitutional rights, specifically through Defendant Anthony's alleged attempts to strip him of custody of his children through means of various illegal acts, including perjury. *Id.* at 31.

Throughout different sections of the Complaint, Plaintiffs raise various causes of action. The caption of the complaint alleges violations of 28 U.S.C. Section 1331 (Federal Question Jurisdiction); 42 U.S.C. Section 1983 (Civil Action for Deprivation of Rights); 18 U.S.C. Section 371 (Conspiracy to Commit Offense or to Defraud United States); 18 U.S.C. Section 1001 (Making False Statements); 18 U.S.C. Section 1341 (Fraud by wire, radio, or television);[4] 18 U.S.C. Section 1503 (Influencing or injuring officer or juror); 18 U.S.C. Section 1512 (Tampering with a witness, victim, or an informant); 18 U.S.C. Section 1519 (Destruction, alteration, or falsification of records in federal investigations); 18 U.S.C. Section 1621 (Perjury); 18 U.S.C. Section 1961 (Defining racketeering); and 47

---

[4] The Court notes that the allegations of fraud pled by the Plaintiff are subject to FRCP 9(b)'s pleading with particularity standard. However, because the issue raised by the Defendant is limited to Dismissal under Rule 8, the Court need not assess Plaintiff's compliance with Rule 9 at this time.

U.S.C. Section 231 (Restricting access to materials harmful to minors on the internet). Compl. at 1. The body of Plaintiffs' Complaint raises conspiracy to defraud, (*id.* at 1); criminal mischief, (*id.*); fraud and conspiracy to commit fraud, (*id.*); domestic terrorism, (*id.* at 5); extorsion, (*id.* at 6); conspiracy to commit fraud in violation of 18 U.S.C. Section 1961 (R.I.C.O. Act), (*id.*); criminal threats, (*id.* at 7); destruction of property, (*id.* at 8); unjust enrichment, (*id.*); witness tampering, (*id.* at 9); destruction of evidence, (*id.*)*;* "depriving Plaintiffs of their civil rights", (*id.* at 13); conspiring to kill Plaintiff Anthony, (*id.* at 19); conspiring to cause harm to Plaintiff Anthony, (*id.* at 21); coercion, (*id.* at 26); violations of Plaintiffs' First, Second, Fourth, Eighth and Fourteenth Amendment rights, (*id.* at 27); and defamation, (*id.* at 4). Further, in the "Jurisdiction" section of the Complaint, Plaintiffs refer to more sections of the United States Code. *Id.* at 2. (alleging violations of 18 U.S.C. §§ 371, 1001, 1343, 1344, 1349, 1503, 1512, 1519, 1521, 1621, 1622; and 42 U.S.C. §§ 230, 2331).

Plaintiffs include requests for relief both throughout the body and at the end of the Complaint. *Compl.* at 10, 22, 25, 38, 44. These requests for relief include preliminary injunctive relief, (*id.* at 10), criminal charges against the Defendants, (*id.* at 22, 44), $10,000,000 in damages, (*id.* at 38), and Attorney's Fees. *Id.* at 44.

## LEGAL STANDARD

Under Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must include: (1) a short and plain statement of the grounds for the court's jurisdiction; (2) a short and plain statement of the claim showing entitlement to relief; and (3) a demand for the relief sought. Fed.R.Civ.P. 8(a). Rule 8(d) further requires each allegation to be "simple, concise, and direct." Fed.R.Civ.P. 8(d)(1). When, as here, the plaintiff is proceeding *pro se*, the "liberal pleading standards set forth by Rule 8(a)(2)" are even less stringent because "[a] document filed *pro se* is 'to be liberally construed[.]'" *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The purpose of Rule 8 is to provide a defendant with fair notice of the claims alleged and the grounds on which those claims rest. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("*Twombly*"). Pleadings that do not comply with Rule 8's

"simple, concise, and direct" requirements impose unfair burdens on litigants because they fail to put a defendant on notice as to what claims are being brought against them. *See McHenry v. Renne*, 84 F.3d 1172, 1179-1180 (9th Cir. 1996); *and see Twombly*, 550 U.S. at 555.

"The propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit." *McHenry,* 84 F.3d at 1179. The standards set by Rule 8, requiring that each allegation be pled simply, concisely, and directly, "applies to good claims as well as bad, and is a basis for dismissal independent of Rule 12(b)(6)." *Id*. (citations omitted). While dismissal under Rule 8 is often not justified for excess length alone, *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008), dismissal is proper where a complaint is confusing, redundant, prolix, and largely irrelevant. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 415 (9th Cir. 1985); *but see Hearns v. San Bernardino Police Dep't*, 530 F.3d at 1127-1132 (holding that plaintiff's eighty-one-page complaint comprised of extensive factual detail did not warrant dismissal under Rule 8 because the complaint was well organized, coherent, separated claims into distinct sections and coherently stated viable claims that defendants would have little difficulty responding to). When considering dismissal in these circumstances, the court should first consider "less drastic alternatives" such as permitting amendments to the complaint or granting additional time. *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 651, 674. However, the Court is not required to exhaust all possible options before dismissing a case. *Id.* Moreover, "a district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015).[5]

---

[5] Whereas, here, the motion is only brought by one defendant, the Court may dismiss the Complaint as to all Defendants where ". . .such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related." *Silverton v. Dep't of Treasury of U.S. of Am.*, 644 F.2d 1341, 1345 (9th Cir. 1981).

**DISCUSSION**

Defendant argues Plaintiff's Complaint should be dismissed for failure to comply with Rule 8 on several grounds. Mot. at 2-4. Defendant contends that Plaintiffs fail to provide a "short and plain statement of the claim" that is "simple, concise, and direct," and instead presents a "rambling and unfocused tome" of facts giving rise to their claims. *Id.* at 3-4. Because of this, Defendant claims the Complaint fails to "present a succinct and straightforward statement alleging the wrongdoings of each Defendant." *Id.* at 4. Defendant also asserts the Complaint is "replete with repetition." *Id.* As a result of these deficiencies, Defendant argues, the Complaint presents an "unreasonably onerous burden" on each Defendant to prepare an Answer that addresses each allegation independently. *Id.*

Plaintiffs respond, insisting their Complaint is simple, concise, and direct. Opp'n at 4. In support of their Opposition, Plaintiffs cite twenty-one cases. *Id.* at 15-20. Among the cases cited, the Court can only locate eight, as the remaining cases are either fictional or improperly cited. Interestingly, four of these undiscoverable cases have citation numbers that are sequential. For example, one case is cited as "123 F.3d 456." *Id.* at 15.

In *McHenry*, the Ninth Circuit upheld a dismissal of a similar complaint under Rule 8. 84 F.3d at 1180. There, the complaint was fifty-three pages long (only seven more pages than the Complaint here), it mixed factual allegations, included information and argument that was not directly relevant to the claims alleged, and the legal argument itself was confusingly structured. *Id.* at 1174. Similar to the instant case, the plaintiff alleged a conspiracy by numerous defendants to assault and imprison him. *Id.* In reviewing the complaint, the Ninth Circuit found the factual allegations were set forth in "narrative ramblings" and storytelling that were not a short and plain statement of the facts. *Id.* at 1176. Therefore, the *McHenry* court found that "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery," and dismissed the Complaint. *Id.* at 1178, 1180.

Similarly, here, Plaintiffs present their claims in a lengthy and fractured narrative. For example, at page four of the Complaint, Plaintiffs address the conspiracy to defraud

but do not begin discussing the factual basis for this claim until page nine. Rather, the next five pages of the Complaint make vague references to other causes of action, (*id.* at 4-8), and one Defendant's mental health records, (*id.* at 7). As another example, Defendant Isaac Galvez's alleged destruction of property and alleged destruction of evidence is mentioned on pages eight, ten, twenty-two, and twenty-eight of the Complaint.

As in *McHenry*, Plaintiffs fail to make it clear which claims are asserted against which Defendants. Interspersed throughout the Complaint are narrative recitations often involving multiple defendants, references to multiple legal causes of action, and conclusory statements of liability that make it unclear whether the author is providing background information for a claim or making one. *See, e.g., id.* at 5-6, 9, 14-16, 17-18. Plaintiffs further lengthen their Complaint and distract from their core allegations by including pages of superfluous information that do not serve to inform Defendants of the claims brought against them. *See, e.g., id.* at 17, 23. While Plaintiffs do attempt to specify in some paragraphs which Defendants are connected to which allegations, the narrative, interruptive, and repetitive structure does not simply, concisely, and directly put defendants on notice of Plaintiffs' claims.

And in *Shakespeare v. Wilson*, a *pro se* plaintiff alleged a broad conspiracy against numerous defendants. 40 F.R.D. 500, 503 (S.D. Cal. 1966). There, the plaintiff attempted to characterize her allegations as constitutional deprivations by including references to "equal protection," and "due process," but did not set forth with specificity what acts gave rise to these constitutional violations. *Id.* at 504. The district court dismissed her complaint, finding that such conclusory, vague and imprecisely pled allegations did not give defendants fair notice of her claims. *Id.* at 503.

Lastly, as in *Shakespeare*, Plaintiffs here make repeated references to Defendants' violations of Plaintiff Anthony's constitutional rights. These allegations are largely conclusory, stating Defendants' actions somehow violated Plaintiffs' Second, Fourth, Eighth, and Fourteenth Amendment rights. Compl. at 27, 28. In the Court's view—like in *Shakespeare*—this is a case of a disappointed state court litigant who has brought

multiple lawsuits in federal court "as an expression of hurt feelings and dissatisfaction with the results in the state tribunals," and whose Complaint falls short of Rule 8's pleading standard. *Shakespeare*, 40 F.R.D. at 504.

As written, the Complaint impermissibly asks the Court and Defendants to piece together the claims alleged and speculate as to which of these claims pertain to which Defendant. This structure and form of pleading is forbidden by Rule 8. *See Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988). Accordingly, Defendant's Motion to Dismiss is **GRANTED**, and Plaintiffs' Complaint is **DISMISSED with leave to amend**.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendants' Motion to Dismiss is **GRANTED with leave to amend**;

2. The Court **GRANTS** Plaintiffs leave to file an amended complaint to cure the deficiencies noted herein no later than **forty-five days from the date of this order**. Plaintiffs are cautioned, however, that should they choose to file an amended complaint, it must be complete by itself, comply with the Federal Rules of Civil Procedure, and any claim not re-alleged will be considered waived. *See* S.D. Cal. Civ. R. 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be considered "waived if not repled"). A failure to do so will result in the dismissal of this action with prejudice.

DATED: February 27, 2025

_____
JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE